UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMIR BALANZAR and CECELIA LAHR, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIDELITY BROKERAGE SERVICES, LLC,<br><br>Defendant. | Case No.: 22-cv-1372-GPC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**[ECF No. 11]** |

On September 11, 2022, Plaintiff Cecelia Lahr ("Plaintiff" or "Lahr")[1] filed a putative class action against Defendant Fidelity Brokerage Services, LLC ("Defendant"

---

[1] Emir Balanzar was also included as Plaintiff in the original filing. On November 29, 2022, Plaintiff Balanzar filed a Notice of Voluntary Dismissal. ECF No. 13. As such, the

1

22-cv-1372-GPC

or "Fidelity") alleging violations of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 637.3. ECF No. 1 ("Compl."). On November 3, 2022, Defendant filed a Motion to Dismiss. ECF No. 11. On December 2, 2022, Plaintiff filed a Response, (ECF No. 15), and on December 16, 2022, Defendant filed a Reply, (ECF No. 16). For the reasons below, the Court **GRANTS** Defendant's Motion to Dismiss with leave to amend.

## BACKGROUND

Fidelity Brokerage Services, LLC is a broker-dealer offering customers various investment products and services. ECF No. 11-1 at 9.[2] Fidelity is registered in Delaware with its principal place of business in Massachusetts. Compl. ¶ 14. Defendant operates thirty-four locations in California. *Id.* Plaintiff Lahr has been a customer of Defendant since 2017 and is a resident of California. *Id.* ¶ 13, 38.

This action arises out of Fidelity's "MyVoice" system and its alleged violation of CIPA, specifically § 637.3. Section 637.3 prohibits any person or entity in California from using "any system which examines or records in any manner voice prints or other voice stress patterns of another person to determine the truth or falsity of statements made by such person without his or her express written consent given in advance of the examination or recordation." *Id.* ¶ 59 (quoting Cal. Penal Code § 637.3(a)). Plaintiff alleges that MyVoice "examine[s] the voice of anyone that calls [Defendant] to determine the truth or falsity of the callers' statements" and operates without the express, written consent of customers. *Id.* ¶¶ 2, 9.

---

Court will refer to Plaintiff Lahr as the sole Plaintiff in the pending action. Defendant's argument Balanzar lacks standing because Balanzar has never been enrolled in MyVoice is moot. ECF No. 11-1 at 13-14.

[2] The page number citations refer to CM/ECF pagination.

Fidelity's MyVoice system creates a "biometric voice print" of a caller, which is saved and used to verify the caller's identity. *Id.* ¶ 3, 6. According to Fidelity's website, the voiceprint is an encrypted digital representation (not a recording) that is "a combination of your physical and behavioral voice patterns. Like a fingerprint, it's unique to you." *Id.* ¶ 6 (citing FIDELITY MYVOICE, https://www.fidelity.com/security/fidelity-myvoice/overview). MyVoice is intended to obfuscate the need for PINs or passwords because "[t]hrough natural conversation, MyVoice will detect and verify your voiceprint in the first few moments of the call." *Id.* Plaintiff alleges the technology works by "(1) making a recording of the initial call with the customer (2) examining that recording to identify specific stress patterns and other characteristics to create a 'voice print' which is entered into a database then (3) examining all subsequent calls from that consumer and comparing the voice prints to those already on file for that consumer." *Id.* ¶ 32.

Plaintiff alleges Defendant performs voice analysis on any individual that calls, regardless of whether they provide express, written consent, and that MyVoice was in use "years prior to publishing its existence and seeking enrollment." *Id.* ¶ 7-9. Plaintiff states Defendant began recording voiceprints no later than 2017. *Id.* ¶ 24 (citing Fred Imbert, *Stock Trading Using Just Your Voice is Not Too Far Away*, CNBC, https://www.cnbc.com/2017/11/22/sandler-oneill-you-may-soon-be-able-to-trade-stocks-with-your-voice.html). Plaintiff alleges Fidelity's website first advertised the use of the MyVoice system around May 2018, and Fidelity did not add a disclaimer to its terms and conditions about the use of MyVoice until January 2021. *Id.* ¶ 26-27. Plaintiff claims that she and class members "were unaware of the new terms and never expressly agreed to them in writing as required by CIPA." *Id.* ¶ 31. The Complaint further alleges that any express consent from customers is provided over the phone, which does not satisfy CIPA's requirement of written consent. *Id.* ¶ 10.

Plaintiff brings this action on behalf of a putative class defined as "[a]ll residents of the State of California that had their voice prints or other voice stress patterns examined or recorded by Defendant to determine the truth or falsity of their statements." *Id.* ¶ 38, 51. Plaintiff seeks injunctive and equitable relief and damages in the amount of $1,000 for each CIPA violation. *Id.* ¶ 66.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff is not required to provide "detailed factual allegations," but the plaintiff must plead sufficient facts that, if accepted as true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A complaint will survive a motion to dismiss when it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct charged." *Iqbal*, 556 U.S. at 678.

A Court is required to view the Complaint in a "light most favorable to the [Plaintiff], accepting all well-pleaded factual allegations as true, as well as any reasonable inferences drawn from them." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

Defendant raises a number of arguments in its Motion to Dismiss. As a threshold matter, Defendant argues that (1) Fidelity's customer account agreement includes a

Massachusetts choice-of-law provision that precludes this claim under CIPA; and (2) Plaintiff provided express, written consent for MyVoice when she accepted the customer agreement. ECF No. 11-1 at 26. Defendant also argues that CIPA's one-year statute of limitations bars this action because the action was filed more than a year after Plaintiff provided consent when she opened a new Fidelity account on November 25, 2020 and accepted the terms of service. *Id.* at 28-30.

Next, Defendant argues that § 637.3 "does not regulate the use of biometric voiceprints for purposes of customer identification." *Id.* at 15. Defendant states that § 637.3 "proscribes the analysis of 'voice stress patterns' for the narrow purpose of determining 'the truth or falsity' of a speaker's statements (absent express written consent)," in essence § 637.3 regulates the use of voiceprints for lie detection rather than the use of voiceprints to determine a speaker's identity. *Id.* Further, Defendant argues Plaintiff fails to state a claim under § 637.3 because the provision requires the challenged conduct to have occurred in the state. *Id.* at 24. They argue that because Plaintiff did not allege Fidelity operated the MyVoice system in California, there is no claim under § 637.3. *Id.* at 25. The Court addresses these arguments in turn.

## I. Request for Judicial Notice

In support of its Motion to Dismiss, Fidelity requests the Court take judicial notice of the existence and contents of the legislative history of Cal. Penal Code § 637.3, attached as "Exhibit B" to ECF No. 11-3. ECF No. 11-4. Plaintiff does not oppose this request. ECF No. 15 at 6 n.2. Accordingly, the Court takes judicial notice of these documents.

## II. Applicable Law

Fidelity argues that Plaintiff's customer account agreement includes a Massachusetts choice-of-law provision and thus bars her from bringing this claim under

5

CIPA. *Id.* at 27. Plaintiff responds that this choice-of-law provision applies only "'to the interpretation and construction' (as well as enforcement) of the contractual terms of the Customer Account Agreement," and that this dispute is not related to the contractual terms. ECF No. 15 at 9-10. The relevant provision reads:

> **This agreement and its enforcement are governed by the laws of the Commonwealth of Massachusetts, except with respect to its conflicts-of-law provisions.**
> All transactions through Fidelity are subject to the rules and customs of the marketplace where they are executed, as well as applicable state and federal laws. In addition, the services below are subject to the following laws and policies:
> - Securities trades: any Fidelity trading policies and limitations that are in effect at the time
> - Online services: the license or usage terms posted online
> - Checkwriting: the applicable provisions of the Uniform Commercial Code and the terms governing the service

ECF No. 11-2 ("Brown Decl."), Exh. 1 at 18; Exh. 2 at 37.

The Ninth Circuit in *Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.*, 890 F.2d 165 (9th Cir. 1989), held that a franchise agreement with a choice-of-law provision stating, "[t]his agreement shall be construed in accordance with the laws of the state of the Licensee's Operating Locality" meant the choice-of-law provision only governed "the construction or interpretation of the franchise agreement itself." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 171 (9th Cir. 1989). Because plaintiff's claim in *Dollar Systems* did not turn on the construction or interpretation of the license agreement, the Ninth Circuit found the choice-of-law provision was inapplicable. *Id.*; *see also Yan Guo v. Kyani, Inc.*, 311 F. Supp. 3d 1130, 1145-46 (C.D. Cal. 2018) (finding that a provision stating an "[a]greement shall be governed exclusively by the laws of the State of Idaho" meant the choice-of-law provision applied "only to the interpretation and construction" of the agreement itself and does not "bar the statutory claims Plaintiffs advance under

California law"). Courts in this Circuit have applied this same approach to choice-of-law provisions in consumer agreements. *See e.g.*, *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 965 (S.D. Cal. Oct. 11, 2012). Courts have held that choice-of-law provisions relating only to the "construction and interpretation" of a consumer contract do not apply to "non-contractual claims asserted under California's [] statutes." *Id.*

The *Dollar Systems* choice-of-law provision is similar to Fidelity's choice-of-law provision. Fidelity's provision reads, "[t]his Agreement and its enforcement are governed by the laws of the Commonwealth of Massachusetts . . . ." Brown Decl., Exh. 1 at 18; Exh. 2 at 37. The natural reading of Fidelity's provision is that only actions brought pursuant to the agreement are intended to be governed by Massachusetts law, i.e., the choice-of-law provision is meant to apply only in actions concerning the interpretation, construction, and enforcement of the contractual terms of the customer account agreement. The choice-of-law provision does not apply to "non-contractual claims" asserted under a California privacy statute. *In re Sony*, 903 F. Supp. at 965. The fact that the CIPA cause of action loosely relates to the customer account agreement because the MyVoice technology is simply mentioned in the agreement is not enough. Plaintiff's CIPA claim is not brought pursuant to contract law and is not sufficiently related to the customer account agreement. Thus, the Court finds the Massachusetts law does not apply.

### III. Plaintiff's Consent

Defendant next argues that Plaintiff fails to plead a claim because "she provided express written consent to the terms of Fidelity's customer account agreement" and § 637.3 only prohibits recordation of a voiceprint absent express written consent. ECF No. 11-1 at 28. Defendant states Lahr provided the statutorily required consent when she opened a Fidelity account on November 25, 2020 and electronically accepted the terms of

the customer account agreement. *Id.* Plaintiff responds that the agreement's disclosure of the MyVoice program in the terms and conditions simply "advertises the existence of the MyVoice program" and does not meet the consent standard. ECF No. 15 at 16. Any disclosure in the customer account agreement is further complicated by the fact that, in other places, Defendant seems to suggest that customers must affirmatively enroll in the MyVoice system. *See e.g.*, ECF No. 11-3 ("Edwards Decl."), Exh. A at 6 ("How do I enroll in Fidelity MyVoice? As a Fidelity customer, the next time you call, a representative will offer to enroll you.").

The Court agrees with Plaintiff that the question of whether Fidelity received the statutorily required consent is a factual question not appropriate for resolution at the Motion to Dismiss stage. Plaintiff's Complaint does not allege any facts tending to show she provided express, written consent upon opening a new account. For example, her Complaint does not discuss what materials were in her possession when she opened the 2020 account, and what, if any, agreements she had to sign and in what manner any consent was given. *See* ECF No. 15 at 15 (stating that no where is it stated "that the new Customer Account Agreement was provided to Plaintiff Lahr, that Plaintiff Lahr manifested her consent in any meaningful way, or that she had not been enrolled in the MyVoice Program prior to this purported [2020] disclosure").

At this stage of the proceedings, the Court is required to take the facts alleged in the Complaint as true and to view the facts in the light most favorable to the non-moving party. *See Johnson*, 534 F.3d at 1122. Plaintiff's Complaint states that she "did not give consent—written or otherwise—to Defendant to collect voiceprints" and that she was enrolled in the MyVoice program as early as 2017. Compl. ¶¶ 38-40, 45. The Court must accept this as true. Whether Plaintiff provided sufficient written consent in 2020, and

whether Fidelity was recording voiceprints as early as 2017 absent any consent, is a factual matter that should be resolved following discovery.[3]

## IV. CIPA's One-Year Statute of Limitations

CIPA is subject to a one-year statute of limitations. Cal. Civ. Proc. Code § 340; *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) ("Under the CIPA, the applicable statute of limitations is one year."). Defendant argues that Plaintiff's claim is barred by the one-year statute of limitations because she did not file suit until September 11, 2022, which was more than one year after opening her 2020 account and agreeing to its terms and conditions. ECF No. 11-1 at 29-30. Plaintiff's Complaint alleges the "delayed discovery" rule tolls the one-year statute of limitations. Compl. ¶ 46. She states she "did not know (and had no way of knowing) that Plaintiffs' voices were recorded for purposes of creating voice prints, or that Plaintiffs' voice stress patterns were examined, because Defendant kept this information secret." *Id.*

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "[A] complaint cannot be dismissed unless it appears beyond doubt

---

[3] Defendant requests that if the Court finds the argument as to whether Lahr provided express, written consent not suitable for resolution on a Rule 12(b)(6) motion, that the Court "convert this portion of its motion to a motion for summary judgment." ECF No. 11- at 29 n. 11. To convert Defendant's Motion to Dismiss into a Motion for Summary Judgment, Plaintiff would need to be given an opportunity to present opposing evidence. *See Garaux v. Pulley*, 739 F.2dd 437, 438 (9th Cir. 1984). The Court declines to engage in this sort of factual discovery at this stage.

that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Id.* (quoting *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

The Court finds CIPA's one-year statute of limitations does not bar Plaintiff's suit at the Motion to Dismiss stage. Separate violations of the same right can each trigger its own statute of limitations period. *See Aryeh v. Canon Bus. Sols. Inc.*, 292 P.3d 871, 880 (Cal. 2013) (stating it is "long settled that separate, recurring invasions of the same right can each trigger their own statute of limitations"). Courts in this Circuit have found that a statute's reference to a singular act (e.g., "communication") means there is "'no textual basis for morphing what otherwise would be considered separate violations into a single violation because they flow from a common practice or scheme.'" *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 625 (N.D. Cal. Mar. 17, 2021) (quoting *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1148 (9th Cir. 2020)). § 637.3 refers to a singular act, specifically "examination" or "recordation," as triggering a violation of the penal code provision. Thus, each time an individual is examined by Fidelity's MyVoice system a potential violation of CIPA occurs.

Although Plaintiff does not allege the exact dates in which she placed calls to Fidelity and had her voice examined by the MyVoice system, Plaintiff does allege she has been a customer since 2017 and that over these years she has "called Defendant on numerous occasions." Compl. ¶ 39. Plaintiff does not need to allege more at this stage because a complaint can only be dismissed as time barred if "'it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Von Saher*, 592 F.3d at 969 (quoting *Supermail*, 68 F.3d at 1206). Plaintiff clearly could prove that she called Fidelity one year prior to the filing of her Complaint. *See also Harrison v. Great HealthWorks, Inc.*, 2017 WL 2554448, at *3 (S.D. Cal. June 13, 2017) (finding complaint not time-barred even though the "complaint lack[ed] detail"

and plaintiff had simply alleged the conduct "occurred during the relevant limitations period").

Whether the "delayed discovery" rule tolled the statute of limitations for Plaintiff's claims that would normally be time-barred (i.e., any alleged CIPA violation prior to September 11, 2021) is a factual question the Court is not prepared to answer at this point. Under California law, the delayed discovery rule applies when a plaintiff demonstrates that "a reasonable investigation at [the] time would not have revealed a factual basis for that particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 917 (Cal. 2005). A plaintiff must show that they could not have made an "'earlier discovery despite reasonable diligence.'" *Id.* at 921 (quoting *McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 151, 160 (Cal. Ct. App. 1999)). Whether Plaintiff exercised reasonable diligence or was alerted to the fact her voiceprint was subject to recordation and examination prior to September 11, 2021 is another question that should be addressed after discovery.[4]

Because Plaintiff is able to prove a set of facts that her voice was examined in violation of CIPA prior to the running of the one-year statute of limitations, the Court does not dismiss Plaintiff's Complaint on this ground. Although discovery might reveal Plaintiff's claim is time-barred and/or unmeritorious because she consented to MyVoice

---

[4] Defendant argues the Court must determine if Plaintiff pled sufficient facts in her Complaint to show applicability of the delayed discovery rule. *See* ECF No. 11-1 at 30. Plaintiff must only meet the delayed discovery pleading standard when the "'complaint shows on its face that [the] claim would be barred without the benefit of the discovery rule.'" *Harrison v. Great HealthWorks, Inc.*, 2017 WL 2554448, at *3 (S.D. Cal. June 13, 2017) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920 (Cal. 2005)). Here, Plaintiff's Complaint is not necessarily time-barred without help from the delayed discovery rule. As discussed, each violation of § 637.3 would trigger its own statute of limitations and it is likely Plaintiff has placed a call to Fidelity between September 11, 2021 and the filing of her Complaint.

via the 2020 customer account agreement, Plaintiff's Complaint survives the present Motion.

## V. Plaintiff's CIPA Claim

Defendant argues that Plaintiff fails to state a claim under § 637.3 because the penal code provision "does not regulate the use of biometric voiceprints for purposes of customer identification." ECF No. 11-1. Fidelity argues both the plain text of § 637.3 as well as its legislative history supports finding the provision only regulates the use of voiceprints for the narrow and specific purpose of lie detection. *Id.* at 16-20. Because MyVoice is not a lie detection system, and is merely a customer identification system, Plaintiff fails to state a claim under the statute. *Id.* at 16. Defendant also argues that Plaintiff fails to state a claim under § 637.3 because she does not plausibly allege recording or examination occurred in California. *Id.* at 24. Plaintiff responds that customer identification is inherently lie detection, and that the place of injury was California. ECF No. 15 at 20. Section 637.3 in its entirety reads:

> (a) No person or entity in this state shall use any system which examines or records in any manner voice prints or other voice stress patterns of another person to determine the truth or falsity of statements made by such other person without his or her express written consent given in advance of the examination or recordation.
> (b) This section shall not apply to any peace officer, as defined in Section 830, while he is carrying out his official duties.
> (c) Any person who has been injured by a violator of this section may bring an action against the violator for his actual damages or one thousand dollars ($1,000), whichever is greater.

### A. MyVoice and § 637.3

The Court must determine if § 637.3 only regulates the use of voiceprints to the extent they are used for lie detection, and, if so, whether Plaintiff has plausibly alleged MyVoice is used for lie detection purposes.

#### i.     Statutory Interpretation

It is clear to the Court that § 637.3 is limited in scope to the use of voiceprints "to determine the truth or falsity of statements." Both Parties agree that, to interpret a statute, the Court must "determine the Legislature's intent so as to effectuate the law's purpose." *Brennon B. v. Superior Court*, 513 P.3d 971, 977 (Cal. 2022). A court should first examine the statute's text and its plain meaning; however, California precedent "urges [the court] to look beyond the statutory language to 'the purpose and history of [§ 637.3]' in order to determine whether 'the Legislature intended the statute to apply to the conduct of the entit[y] at issue' here." *Id.* (quoting *Warfield v. Peninsula Golf & Country Club*, 896 P.2d 776, 789 (Cal. 1995)). The Court finds both the statute's plain text and its purpose and history support finding § 637.3 is limited in scope to voiceprint analysis for the specific purpose of determining "the truth or falsity" of a speaker's statement.[5]

---

[5] Although the briefing is slightly unclear on this point, Defendant notes the statute's use of the phrase "voice prints or other voice stress patterns." ECF No. 11-1 at 16. It seems Defendant intends to argue that a MyVoice voiceprint is not a type of "voice stress pattern," and thus Plaintiff's purported injury is outside the scope of the statute. The Court agrees that the correct interpretation of § 637.3 is that it regulates "voice stress patterns," and that a "voiceprint" is a type of "voice stress pattern." For example, "Next year I intend to visit Disneyland and other theme parks in California," implies that "Disneyland" is a theme park in California. Similarly, § 637.3's construction implies that a voiceprint is a type of voice stress pattern. On this point, it appears Defendant's argument cuts against itself—MyVoice analyzes a voiceprint, which is a *type of voice stress pattern*; the statute regulates the recordation and examination of *voice stress*

13

1        First, the plain text of § 637.3 unequivocally limits the scope of the statute to the
2 examination or recordation of a voice stress pattern for the purpose of determining "the
3 truth or falsity" of the statement(s). The provision is crystal clear on this point.
4        The legislative history of § 637.3 also supports finding that the statute is intended
5 to regulate voiceprint analysis for the narrow purpose of lie detection, and that its use
6 should not extend beyond this purpose. ECF No. 11-1 at 17; *see generally* Edwards Decl.
7 Exh. B. The Enrolled Bill Memorandum for AB 2798 states:

> Existing law prohibits employers from demanding or requiring that any employee or any applicant for employment or prospective employment submit to or take a test involving psychological stress evaluators, including polygraphs, lie detectors or similar tests or examinations, as a condition of employment or continued employment, *but does not prohibit employers or others from utilizing a psychological stress evaluator to analyze voice prints or other voice stress patterns of a person to determine the truth or falsity of statements* made by such person . . .
>
> This bill would prohibit any person or entity, other than a peace officer carrying out his official duties, from using any system which examines or records in any manner voice prints or other voice stress patterns of any other person to determine the truth or falsity of such other person without his or her express consent given in advance.

---

*patterns*, so the statute is applicable. In addition, Plaintiff plausibly alleges that a voiceprint is a type of voice stress pattern, and this is the Court's singular focus at this point. *See* Compl. ¶¶ 33-34 (discussing the stress patterns analyzed and stating "Defendant analyzes unique acoustic and behavioral features of a caller's voice, including stress patterns . . . .").

ECF No. 11-3 at 19 (Edwards Decl.) (emphasis added); *see also id.* at 24 (letter from assemblyman Richard Lehman to California Governor Brown stating "[t]here must be strict statutes regarding the use of these modified lie detectors by private citizens").

In addition, it appears that an accompanying concern behind the passage of § 637.3 was a view that the use of voiceprints for lie detection purposes in the 1970s was not accurate or trustworthy. The Assembly Committee on Labor, Employment, and Consumer Affairs held a hearing in May 1978 on "polygraph and related machines (such as stress analyzers) at which there was expert testimony of the accuracy of such machines. Testimony indicated that in many cases, persons are under stress for reasons other than telling a lie and voice stress analyzers would pick this up as a lie." ECF No. 11-3 at 28. Meanwhile, the legislative history does not reveal any concern for consumer privacy over their biometric data, as Plaintiff argues. *See e.g.*, Compl. ¶ 18, 21. Instead, the legislature was concerned a statement might be inaccurately and surreptitiously classified as a lie and later used against an individual without their knowledge or consent. Here, Plaintiff's concern with the MyVoice system is not that it might inaccurately detect a lie—Plaintiff argues more generally that MyVoice is an invasion of privacy. *See id.*

In conclusion, it is apparent that the primary motivation behind the passage of § 637.3 was the lack of regulation on the use of "psychological stress evaluator[s]" to analyze voiceprints to determine the truth or falsity of a speaker's statements where the evaluators were prone to inaccuracy. Thus, the Court finds that § 637.3 only prohibits the use of voice stress analysis or voiceprints for lie detection.

      **ii.    MyVoice as Lie Detector**

Next, the Court addresses whether the MyVoice authentication system operates as a lie detector with the specific purpose of determining "the truth or falsity" of a speaker's statement. Plaintiff alleges that MyVoice "is very similar to a Polygraph Test" and "uses the full audio of a call to determine its characteristics, meaning Defendant analyzes

unique acoustic and behavioral features of a caller's voice, including stress patterns to determine truth or falsity of statements." Compl. ¶ 34. Plaintiff specifically alleges that MyVoice is innately designed to prove the "truth or falsity" of a particular statement, namely that accountholders are who they claim to be. Compl. at ¶ 64; ECF No. 15 at 20.

Defendant responds that the authentication process does not rely upon a speaker identifying themselves, that is, that the comparison involved in the authentication does not turn on the truth or falsity of anything the speaker says. Edwards Decl., Ex. A. Instead, "[t]hrough natural conversation, MyVoice will detect and verify your voiceprint*" *Id*. at 4. The Court agrees. MyVoice does not require a caller to claim they are the account holder or to make any other claim or affirmative statement. According to the MyVoice FAQs upon which the Complaint heavily relies, the "natural conversation" of the caller is examined and compared to the known voiceprint that is maintained by Fidelity. The MyVoice voiceprint essentially acts as a passcode. Rather than a customer inputting a four-digit pin or signing into an account using facial or fingerprint recognition, a customer can simply call Fidelity and have their voiceprint analyzed and recognized. As described and alleged in the Complaint, MyVoice is nothing more than a biometric passcode and is not a lie detector.

Other than the conclusory claims that MyVoice operates as a lie detector, Plaintiff has failed to plausibly allege that MyVoice is designed "to determine the truth or falsity of statements." As a result, the Court GRANTS the motion to dismiss with leave to amend to address the deficiencies discussed above, if possible.

### iii.    California-Based Conduct

§ 637.3 limits its geographic scope to California and states that "[n]o person or entity *in this state* shall use any system which examines or records in any manner voice prints or other voice stress patterns . . . ." Cal. Penal Code § 637.3 (emphasis added).

Defendant argues that Plaintiff's claim must fail because she did not allege that Fidelity's voiceprint recordation or examination took place in California. ECF No. 11-1 at 24. In a footnote, Defendant states that "[w]ere the case to proceed to discovery, the evidence would show that Fidelity does not examine or record voice stress patterns in California, because the personnel, servers, and systems that Fidelity uses to operate MyVoice are all located elsewhere." ECF No. 11-1 at 25 n.8.

This is largely a factual question better suited to later stages of litigation. Plaintiff's Complaint states that Fidelity has "thirty-four (34) locations in California." Compl. ¶ 14. It is a reasonable inference for the Court to make that any phone call Plaintiff makes to any one of these locations in California would involve the use of the MyVoice system in the state of California. The Court DENIES the motion to dismiss based on the scope of § 637.3.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss with leave to amend. Should Plaintiff choose to file a First Amended Complaint, she must file it on or before **March 1, 2023**.

**IT IS SO ORDERED.**

Dated:  February 3, 2023

Hon. Gonzalo P. Curiel
United States District Judge